1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DARREN GILBERT,                      Case No. 1:21-cv-01640-EPG

12                    Plaintiff,          ORDER GRANTING, IN PART, PLAINTIFF'S
                                          MOTION FOR ATTORNEY FEES AND
13            v.                          EXPERT WITNESS COSTS

14   DOLLAR TREE STORES, INC., *doing*    (ECF No. 29).
     *business as* Dollar Tree #2459, *et al.*,
15
16                    Defendants.
17
18

19          Before the Court is Plaintiff Darren Gilbert's motion for attorney fees and expert witness

20   costs. (ECF No. 29). Defendants Dollar Tree Stores, Inc. *d/b/a* Dollar Tree # 2459 and Kimberly

21   Anne Soranno (collectively, "Defendants") oppose. (ECF No. 35). The parties have consented to

22   conduct all proceedings in this action before the United States Magistrate Judge under the

23   provisions of 28 U.S.C. § 636(c)(1), with any appeal to the Court of Appeals for the Ninth

24   Circuit. (ECF Nos. 32, 33, 34). For the reasons given below, the Court will grant, in part,

25   Plaintiff's motion for attorney fees and expert witness costs.

26   \\\

27   \\\

28
                                              1

## I.      BACKGROUND

Plaintiff filed this case on November 10, 2021, alleging that Defendants violated the Americans with Disabilities Act (the ADA), 42 U.S.C. §§ 12101 *et seq.*; California's Unruh Civil Rights Act (the Unruh Act), California Civil Code § 51, *et seq.*; and California Health and Safety Code §§ 19955(a), 19959. (ECF No. 1). Specifically, Plaintiff alleged that he is substantially limited in his ability to walk and must use a wheelchair or prosthetic for mobility. (*Id.*, p. 2). Around September 16, 2021, he visited Dollar Tree #2459 ("the store") in Modesto, California, to buy office supplies, encountering the following barriers: (1) he found the ramp leading up to the store's entrance to be too steep and narrow to safely ascend while using his prosthetic. (*Id.*, pp. 2-3). Because of these barriers, he was deterred from visiting the store, but he would return once the barriers are removed. (*Id.*, p. 3). Plaintiff sought injunctive and declaratory relief, statutory damages, and attorneys' fees and costs. (*Id.*, p. 8). Plaintiff's complaint also stated that he would seek to amend his complaint to identify any additional existing barriers to Plaintiff's access of the store as it is "Plaintiff's intention to have all barriers which exist at the [store] and relate to his disabilities removed to afford him full and equal access. (*Id.*, p. 3).

Defendants filed an answer to Plaintiff's complaint on December 29, 2021. (ECF No. 10).

On April 19, 2022, the parties submitted a joint scheduling report. (ECF No. 13). The parties' reported to the Court that there was no dispute that Plaintiff "personally encountered barriers to his access at the Facility and is entitled to injunctive relief, statutory damages, and costs from Defendants." (*Id.*, p. 7). According to Defendants, the only remaining dispute concerned the amount of attorney fees demanded by Plaintiff. (*Id.*) Plaintiff similarly indicated that the issue of attorney fees and costs was undetermined. (*Id.*, p. 5). However, the parties each reported dissatisfaction in the other's diligence and conduct during settlement negotiations. (*Id.*, pp. 3-6).

Defendants' statement argued that Defendants sought a quick settlement, but encountered resistance from Plaintiff:

> Prior to filing her Answer, [Defendant Sorrano] tried to settle the action, but Plaintiff offered only a limited release and demanded attorney's fees that under no stretch of the imagination could be considered reasonable. Concurrent with her Answer, Soranno served Plaintiff with a Rule 68 Offer of Judgment that, if accepted, would have provided Plaintiff with 100% of the relief Plaintiff

demanded in this action from both Soranno and Dollar Tree. More particularly, the Rule 68 Offer required Soranno to bring the exterior of the subject property into compliance with the Americans with Disabilities Act of 1990, pay Plaintiff the statutory minimum damages of $4,000 provided in California Civil Code § 52(a), the costs which Plaintiff incurred, and attorney's fees that were far more than the reasonable value of legal work in a case that required almost no lawyering.

When the time expired for Plaintiff to accept the Rule 68 Offer expired [sic], Soranno served a second Rule 68 Offer which, like the first, required her to bring the exterior of the subject property into compliance with the Americans With Disabilities Act of 1990, pay Plaintiff the statutory minimum damages of $4,000 provided in California Civil Code § 52(a) and the costs which Plaintiff incurred, with attorney's fees to be determined by the Court, which again would have provided Plaintiff with 100% of the relief Plaintiff demanded in this action from both Soranno and Dollar Tree. Again Plaintiff did not accept the Offer. On March 18, Plaintiff's expert inspected the subject property. Although Defendants' counsel advised Plaintiff's counsel prior to the inspection that Soranno (and, if necessary, Dollar Tree, if any alleged ADA issues were identified for which Dollar Tree would be responsible) would see that any additional work identified be done, Plaintiff now seeks to amend her Complaint, an effort that is unnecessary but consistent with her counsel's approach to this litigation.

(*Id.*, pp. 5-6). Defendants noted that they "disagree[d] with Plaintiff's revisionist history of their efforts to resolve the case and will provide a detailed rebuttal in their response to an attorney's fees motion." (*Id.*, p. 6 n.1). Plaintiff's statement, meanwhile, argued that Plaintiff sought a quick settlement, but encountered resistance from Defendants:

Again, Plaintiff objects to the discussion of confidential settlement communications in this filing, but Defendants mischaracterize the history of settlement discussions and Plaintiff is forced to correct the record. Early on, in December 2021, Plaintiff provided Defendants a proposed "limited release" – limiting the released claims to those alleged in the Complaint rather than waiving claims as to barriers Plaintiff did not presently know about. This was offered as an alternative to conducting an inspection to identify all barriers so that they could all be addressed in the settlement agreement in order to obtain a "general release." Plaintiff also offered another alternative; Defendants could have the entire Facility inspected themselves by a Certified Access Specialist ("CASp") so that all barriers could be identified and addressed in the settlement agreement, again resulting in a general release of claims. On December 20, 2021, Plaintiff relayed a comprehensive settlement demand, including the aforementioned limited release and a monetary demand consisting of $4,000 in statutory damages, plus the attorney's fees and costs that had been incurred to date. Although the parties were not far apart with their monetary settlement offers, Defendants continued to insist upon a general release, while they reportedly did obtain their own CASp report but refused to share it with Plaintiff for purposes of settling the injunctive relief claims, and offered only to remove barriers on the exterior of the Facility. The Rule 68 offers made by Defendants likewise required a general release while

3

1
2
3

providing only partial injunctive relief (limited to removal of exterior barriers, and lacking specificity as to what would be corrected). Without agreement as to injunctive relief, there could be no settlement, and Defendants' intransigent refusal to provide their CASp report was the primary impediment.

4
5
6

Therefore, Plaintiff was forced to proceed with the site inspection so that he could identify all barriers at the property and seek full injunctive relief. Following the inspection, Plaintiff provided defense counsel with a proposed settlement agreement providing for a general release in exchange for all remaining interior and exterior barriers at the property[.]

7

(*Id.*, p. 3).

8
9
10
11

The Court held an initial scheduling conference on April 26, 2022. (ECF No. 14). Based on the parties' apparent dispute regarding attorney fees, the Court ordered the parties to submit a joint status report regarding their settlement efforts and Plaintiff's plans to submit a motion for fees by no later than July 8, 2022. (*Id.*)

12
13
14
15
16

The parties' status report stated they were in the process of finalizing the settlement agreement, and that Plaintiff planned to file a motion for attorney's fees "no later than September 2, 2022." (ECF No. 15, p. 2). Further, Defendants stated they would not dispute that Plaintiff was the prevailing party in this action. (*Id.*) Accordingly, the Court set a deadline for Plaintiff to file a motion for attorney fees, or alternatively, for the parties to file dispositional documents. (ECF No. 16).

17
18
19
20

On August 31, 2022, the parties filed a stipulation to extend the deadline for Plaintiff to file a motion for attorney fees as the parties had not yet finalized a settlement. (ECF No. 17). The Court granted the parties' request and directed Plaintiff to file any motion for attorney fees by no later than October 3, 2022. (ECF No. 18).

21
22
23

On October 2, 2022, Plaintiff requested that the Court refer the case to the Court's Voluntary Dispute Resolution Program ("VDRP") pursuant to Local Rule 271(b)(4). (ECF No. 19). According to Plaintiff,

24
25
26
27

[W]hile Defendants have indicated that they will, in theory, agree to a settlement providing for injunctive relief while reserving the issue of attorney's fees for a prevailing party motion by plaintiff, they have refused to finalize the settlement. Although counsel have met and conferred unsuccessfully on the matter of Plaintiff's claim for attorney's fees and costs, Plaintiff cannot bring a motion for recovery of attorney's fees until his claims for injunctive relief have been resolved via signed settlement agreement or consent judgment.

28

(*Id.*, pp. 1-2). Plaintiff expressed hope "that VDRP will assist the Parties to finalize the settlement

4

and, possibly, to resolve the remaining issue of attorney's fees and costs." (*Id.*, p. 2). Because the relevant local rule provides the Court with authority to refer a case to VDRP "only if all parties voluntarily agree," the Court declined to grant Plaintiff' request. (ECF No. 20, p. 2) (citing L.R. 271(b)(4)). However, the Court directed Defendants to file a statement indicating whether they agreed to a referral to VDRP. (*Id.*)

On October 31, 2022, Defendants filed a statement of consent to VDRP. (ECF No. 22). Defendants also requested the Court to "direct Plaintiff to serve Defendants with a list of attorney and paralegal work done in a non-block billing format." (*Id.*, p. 1). The Court subsequently issued an order referring the case to VDRP. (ECF No. 23). However, the Court declined to act regarding Defendants' request, noting that Defendants may raise the issue during the VDRP process. (*Id.*, p. 2).

On February 1, 2023, court staff entered a notice of completion of VDRP, noting that the case had not settled. (*See* Docket). However, on February 14, 2023, the parties' joint VDRP completion report indicated that they had "settled Plaintiff's claims for injunctive relief, monetary damages, and litigation costs with the exception of expert witness fees." (ECF No. 25, p. 1).

On March 12, 2023, the parties filed a stipulation for dismissal with prejudice. (ECF No. 27). The parties requested that the Court retain jurisdiction to adjudicate Plaintiff's motion for attorney fees and reimbursement of expert witness fees. (*Id.*) On March 16, 2023, the Court granted the parties' stipulation and request, and the case was closed. (ECF No. 28).

On May 12, 2023, Plaintiff filed the instant motion for attorney fees and expert witness costs. (ECF No. 29). Defendants filed an opposition on May 30, 2023. (ECF No. 35). Plaintiff filed his reply on June 9, 2023 (ECF No. 37). Defendants filed objections on June 16, 2023, and request to file a limited sur-reply.[1] (ECF No. 38). The Court vacated the hearing pursuant to Local Rule 230(g). (ECF No. 36).

## II.     LEGAL STANDARDS

Under 42 U.S.C. § 12205, a party that prevails on an ADA claim may recover "a reasonable attorney's fee, including litigation expenses," at the Court's discretion. "[F]or a

---

[1] The Court denies Defendants' request to file a sur-reply. Defendants have already provided over 1300 pages of exhibits in support of their opposition to Plaintiff's motion. (*See* ECF No. 35).

litigant to be a 'prevailing party' for the purposes of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1171 (9th Cir. 2007) (internal quotation marks omitted).

The lodestar method guides the determination of a reasonable fee. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).

As to the reasonable hourly rate, it is calculated by reference to the prevailing rate within the community for a similar type of work. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

As for what may be reasonably billed for, "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Thus, courts have discounted billing entries for "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying"). Moreover, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . . " *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Further, district courts "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Accordingly, "[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Id.*

"The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional

1   cases, supported by both specific evidence on the record and detailed findings by the lower courts

2   that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee*

3   *Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see also Shayler v. 1310 PCH, LLC*, 51 F.4th

4   1015, 1021-22 (approving adequately explained use of a downward multiplier to calculate

5   attorney fees in ADA case).

6   **IV.   ANALYSIS**

7          Plaintiff's motion seeks to recover fees for one attorney, Tanya E. Moore, and two

8   paralegals, Whitney Law and Isaac Medrano. (ECF No. 29-1, pp. 6-7). Ms. Moore seeks to

9   recover 41.8 hours, Ms. Law seeks to recover 31.3 hours, and Mr. Medrano seeks to recover 1.6

10  hours, with a combined total of 74.7 hour claimed for time spent in this case up until May 15,

11  2023.[2] (ECF No. 37-2, pp. 2-56). Plaintiff also seeks to recover an additional 35.1 hours for the

12  total time spent by Ms. Moore (7.8 hours) and Ms. Law (27.3) in drafting and filing the reply

13  brief. (ECF No. 37, p. 10). In total, Plaintiff seeks to recover $22,223 in fees for the 109.8 hours

14  spent by Ms. Moore's firm in this case. (*Id.*) Plaintiff also contends that he is entitled to $2400 in

15  expert witness costs that he incurred to have a Certified Access Specialist ("CASp") inspect the

    store and identify all barriers to Plaintiff's access. (ECF No. 29-1, p. 3).

16         As a threshold matter, it is undisputed that Plaintiff is entitled to recover attorney fees. A

17  prevailing plaintiff under the ADA "should ordinarily recover an attorney's fees unless special

18  circumstance would render such an award unjust." *Barrios v. California Interscholastic*

19  *Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002) (quoting *Hensley*, 461 U.S. at 429). Here,

20  Defendants do not dispute that Plaintiff is entitled to fees as the prevailing party. (ECF No. 35, p.

21  4).  Nor do Defendants argue that Plaintiff's proposed hourly rates for his attorney, Ms. Moore, or

22  the two paralegals who worked on Plaintiff's case, Whitney Law and Isaac Medrano, are

23  unreasonable.[3] (*Id.*) Rather, Defendants generally contend the amount of time Ms. Moore's firm

24  _____

25  [2] In reply, Plaintiff waived some time or indicated that certain entries included in Defendants' hourly analysis were
    not sought in the motion.

26  [3] Plaintiff proposes $300.00 per hour as a reasonable hourly rate for Ms. Moore and $115.00 per hour for each
    paralegal. (ECF No. 29-1, p. 6). Having reviewed the declaration of Ms. Moore (*see* ECF No. 29-2, pp. 2-4), the
    Court finds that Plaintiff's proposed rates are consistent with the rates of comparable lawyers and paralegals in the

27  Fresno Division. *See Gilbert v. HBA Enterprises, Inc.*, No. 1:21-CV-01358-JLT-SAB, 2022 WL 2663761, at *17
    (E.D. Cal. July 11, 2022), *report and recommendation adopted*, 2022 WL 3327461 (E.D. Cal. Aug. 11, 2022)

28  (concluding that $300 attorney rate and $115 paralegal rate for Ms. Moore's law firm was reasonable in ADA case).

1  seeks to recover is excessive, unreasonable, and unwarranted. (*See e.g.*, ECF No. 35). Defendants

2  also argue that Plaintiff should not be awarded his expert costs because Plaintiff never produced

3  an expert report. (*Id.*, p. 18).

4        The Court finds that a reduction in fees is warranted. This was a relatively straightforward

5  disability access case. The merits of Plaintiff's claims were never at issue. The Court did not issue

6  a scheduling order. No motions, aside from the instant fee motion, were ever filed. That said,

7  Plaintiff is entitled to a reasonable amount in attorney fees. Plaintiff is also entitled to a

8  reasonable amount in attorney fees for the time spent recovering those fees, including defending

9  against Defendants' lengthy and detailed opposition.

10        For the reasons discussed below, the Court will award Plaintiff $10,901.50 in attorney

11  fees for the 54.90 hours the Court finds were reasonably expended by Plaintiff's counsel and

12  paralegals in prosecuting Plaintiff's case, including bringing the instant fee motion. However, the

13  Court will deny Plaintiff's request for an award of expert witness costs.

**A.**     **Hours Reasonably Expended**

14        The Court finds Plaintiff's proposed hourly rates to be reasonable. (*See supra* p. 7 n.3).

15  Thus, the Court proceeds to the second part of the lodestar analysis—the hours claimed to have

16  been reasonably expended in this case.

17        Plaintiff argues that the 109.8 hours billed by Ms. Moore's law firm is a reasonable

18  amount of time given the delays in finalizing a settlement. Defendants urge the Court to

19  substantially reduce the total number of hours sought by Plaintiff to 18.5 hours. (ECF No. 35, pp.

20  18-19). Based on the reasonable hourly rates, Defendants' proposed lodestar would amount to an

21  award of $3,792.50. According to Defendants, Ms. Moore reasonably spent 9.0 hours and Ms.

22  Law and Mr. Medrano spent a combined 9.5 hours. (ECF No. 35, pp. 18-19). The reduced amount

23  is based on billing entry analysis submitted by defense counsel, Mr. Wolf, in support of

24  Defendants' opposition. (*See* ECF No. 35-1, pp. 13-42). This analysis assigns 0.0 hours for many

25  entries Mr. Wolf deems clerical or unnecessary.[4] Other entries are significantly reduced.

26

27    [4] In general fees for clerical tasks such as mailing, obtaining transcripts, researching filing
procedures, time spent recording hours, and collecting documents is not billable. *See Nadarajah
v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). In response to Mr. Wolf's billing analysis, Plaintiff

28  waived many of the entries objected to by Defendants as clerical.

However, the analysis does not challenge a small selection of billing entries equivalent to 9.3 hours. The Court also notes that Defendants' reduced hour amount does not account for the time Ms. Moore and Ms. Law billed to file a reply to Defendants' lengthy opposition.

After review of the parties' briefs and relevant billing records, the Court will apply a 50% downward multiplier to the lodestar amount proposed by Plaintiff. The Court finds that a 50% decrease in the lodestar amount is reasonable due to numerous examples (discussed below) where Plaintiff's counsel billed an excessive amount of time for tasks that should have been performed more efficiently. Further, some of the litigation efforts were unnecessary or redundant.

### 1. *Investigation and other litigation preparation*

Ms. Moore spent 3.4 hours reviewing research regarding the parties, performing a conflict check, and communications with her client between September 24, 2021, and October 5, 2021. (ECF No. 29-3, pp. 2). Ms. Law spent .5 hours reviewing documents and communications from client, conducting additional information as to defendants, reviewing notes and photos from investigation, and revising the draft complaint on November 5, 2021.[5] (*Id.*) Here, the total number of hours spent in pre-litigation planning is approximately twice the amount of time recovered by Ms. Moore's firm for identical tasks in other cases. *See Gilbert v. Mohamad*, No. 1:22-cv-00554-JLT-EPG, at *10 (E.D. Cal. May 2, 2023), *report and recommendation adopted*, 2023 WL 3724796 (E.D. Cal. May 30, 2023) (finding a total of 1.8 hours spent reviewing client communications, researching the identities of defendants, and reviewing notes and photos from the investigation to be reasonable). The time spent by Ms. Moore's firm during the initial stage of this case warrants a significant downward reduction. *See Pierce v. County of Orange*, 905 F.Supp.2d 1017, 1028 (C.D. Cal. 2012) (quoting *Lucas v. White*, 63 F.Supp.2d 1046 (N.D. Cal. 1999)) ("[T]ime *reasonably* spent on pre-complaint investigation, legal research and informal discovery relevant to developing the theory of the case is properly recoverable[.]) (emphasis added).

### 2. *Preparation of the complaint*

Ms. Moore spent 1.40 hours preparing the complaint, including reviewing research,

---

[5] As a note, Defendants' billing entry analysis found the amount of time spent by Ms. Law for this task to be "reasonable." (ECF No. 35-1, p. 15).

reviewing the draft complaint, and finalizing the complaint. (ECF No. 29-3, p. 3). Given Ms.
Moore's experience with filing ADA complaints and because the complaint in this case was very
similar to others filed in past cases,[6] a significant downward reduction is also warranted. *See
Trujillo v. Lakhani*, No. 1:17-CV-00056-LJO-SAB, 2017 WL 1831942, at *7 (E.D. Cal. May 8,
2017) ("The time billed is excessive and duplicative and .5 hours would be a reasonable amount
of time for Ms. Moore to spend on preparing, researching, reviewing, and drafting the complaint
in this action.").

### 3.  *Site Inspection*

Ms. Moore billed 8.0 hours of time regarding the March 18, 2022 site inspection
performed by Plaintiff's consultant, including preparation (.50 hours), travel time (6.0 hours), and
review of the consultant's findings (1.50 hours). (ECF No. 29-3, pp. 5-6). Defendants argue that
Ms. Moore's attendance at the site inspection was unnecessary given the fact that Defendants had
indicated their agreement to injunctive relief based on the consultant's findings. (ECF No. 35, p.
4; *see also* ECF No. 35-5, p. 94 (March 14, 2022 email from Mr. Wolf to Ms. Moore: "Thanks
Tanya. I reiterate that liability is not being contested and that Kim Soranno will get any non-
compliant conditions identified by your expert remedied as quickly as possible.")). Plaintiff
disputes Defendants' assertion that injunctive relief was uncontested at the time of the inspection.
Regardless of whether injunctive relief was at issue at the time of the inspection, Defendants had
agreed not to contest liability and resolve the issues identified by Plaintiff's complaint. Plaintiff
does not explain the benefit or substantive merit of Ms. Moore's attendance at a routine
inspection under these circumstances. Thus, a significant decrease in the hours claimed is
appropriate.

### 4.  *Preparation of the proposed amended complaint*

Prior to the initial scheduling conference, Ms. Law spent 1.80 hours preparing a draft
amended complaint to include new claims for injunctive relief based on the consultant's findings
after the site inspection as well as a stipulation for amendment between April 7 and April 12,
2022. (ECF No. 29-3, p. 6). Some of this time includes preparation of a settlement agreement

[6] As illustrated by Defendants' exhibit of the twenty-eight complaints filed by Ms. Moore on behalf of Plaintiff in the
Eastern District in 2021. (*See* ECF No. 35-4).

incorporating the findings of the consultant to resolve all potential claims. (*Id.*) Further, Ms. Moore spent 1.80 hours communicating with Plaintiff regarding the consultant's findings as to injunctive relief and the first amended complaint. (*Id.*) Defendants contend that any time spent on a draft amended complaint was unnecessary because, by that time, "there was no dispute as to injunctive relief." (ECF No. 35-1, p. 23). In response, Plaintiff argues that he was "obligated to avoid unduly amending his complaint" and that "[b]ecause both tasks require review of the consultant's written findings and photographs, preparation of the settlement agreement and amended complaint were done concurrently in order to reduce the amount of time spent." (*Id.*, pp. 22-23). The Court finds some reduction in fees appropriate because Plaintiff's proposed amendment was minor and uncontested.

###### 5.  *Communications with Plaintiff*

Defendants challenge the amount of time Plaintiff's counsel spent communicating with Plaintiff as unnecessary given their longstanding attorney-client relationship. In response, Plaintiff's counsel asserts that Plaintiff has suffered multiple strokes that have made communicating difficult. (ECF No. 37-1, p. 4). On November 8, 2021, Ms. Moore billed .40 hours for communications with Plaintiff regarding the finalized complaint and Plaintiff's questions regarding the finalized complaint. (ECF No. 29-3, p. 3). On December 13, 2021, Ms. Moore billed .30 hours to update Plaintiff following service of the complaint and her initial correspondence with Mr. Wolf. (*Id.*) On April 12, 2022, Ms. Moore billed 1.50 hours, some of which included communications with Plaintiff regarding the consultant's findings and amended complaint. (*Id.* at p. 6). On April 14, 2022, Ms. Moore billed .30 hours to communication with Plaintiff further regarding the amended complaint. (*Id.*) On December 2, 2022, Ms. Moore billed .30 hours of time to update Plaintiff on the status of his case per Plaintiff's request. (*Id.*, p. 11). On January 27, 2023, Ms. Moore billed .50 hours to communicate with Plaintiff regarding updates to the settlement and release agreement as well as the upcoming VDRP mediation. (*Id.*, p. 12). On January 30, 2023, Ms. Moore billed 1.0 hours to conference call with Plaintiff as preparation for VDRP. (*Id.*, p. 13).

Other courts have significantly reduced the amount of time claimed by Ms. Moore for communications with Plaintiff given Ms. Moore's history of representing Plaintiff in similar

actions. *See Gilbert v. Gsarwar Inc.*, Case Ni. 2:21-cv-02023-MCE-JDP, 2022 WL 4245325, at *4 (E.D. Cal. Sep. 15, 2022), *report and recommendation adopted* 2022 WL 7101283 (reducing the time sought in default judgment from 2.4 hours to .50 hours). Here, the Court finds that some of the time spent by Ms. Moore to communicate with Plaintiff was reasonable in light of Plaintiff's disabilities and necessary due to Ms. Moore's obligations as counsel. However, some of the communication was substantively unnecessary.

Based on these examples and others identified in the parties' briefs, the Court will apply a 50% downward multiplier to the number of hours claimed by Ms. Moore's firm. Accordingly, the Court's finds the lodestar figures are as follows:

| Person | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Tanya E. Moore | 24.8 | $300.00 | $7,440.00 |
| Whitney Law | 29.3 | $115.00 | $3,369.50 |
| Isaac Medrano | .80 | $115.00 | $92.00 |

Thus, the Court finds the total amount of reasonable attorneys' fees to be $10, 901.50.

**C.     Expert Witness Costs**

Under the ADA, a court, in its discretion, can allow a prevailing party to recover reasonable attorneys' fees, including litigation expenses and costs. 42 U.S.C. § 12205. Litigation expenses "include items such as expert witness fees, travel expenses, etc." *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (quoting 28 C.F.R. Pt. 35, App. A., Section-by-Section Analysis, §35.175).

Plaintiff seeks to recover $2400 for the cost of retaining a Certified Access Specialist to inspect the store and identify barriers to Plaintiff. (ECF No. 29-1, pp. 10-11). In support of this request, Plaintiff submits an invoice from CASp Inspected. (ECF No. 29-3). The invoice reflects a single charge of $2400 for "Dollar Tree #2459 1620 Standiford Avenue, Modesto, CA 95350: Travel, Survey and Report Preparation." (*Id.*) Defendants argue that these costs should not be awarded because Plaintiff has not produced the expert report as requested even though the expert's invoice indicates billed time for report preparation. (ECF No. 35, p. 18).

The Court will deny Plaintiff's request for an award of expert costs. As an initial matter, the invoice submitted in support of Plaintiff's expert witness fees is not itemized, and thus, does

not permit the Court to determine whether the expenditures are reasonable. *See Hopson v. Singh*, No. 2:16-cv-3014-TLN-EFB, 2019 WL 4298040, at *4-5 (E.D. Cal. Sept. 11, 2019) (denying request for $2,162.50 in expert witness site inspection fees and declarations because invoice did not specify how much time the expert spent completing each inspection); *see also Johnson v. Yates*, No. 2:14-cv-1189-TLN-EFB, 2017 WL 3438737, at *3 (E.D. Cal. Aug. 10, 2017) (finding that "billing $200 for an ambiguous 'investigation' without providing supporting documents" was unreasonable).

Moreover, the Court finds it relevant that Plaintiff never produced an expert report. In reply, Ms. Moore's supporting declaration states that "Plaintiff's consultant was not asked to prepare an 'expert report,' and he was never retained as an expert. Instead, following the inspection he provided lengthy written findings and numerous photographs of the violations." (ECF No. 37-1, p. 8). However, the expert's billing voice indicates charges for some "report preparation." Plaintiff did not provide any documentation of the expert's written findings. The Court does not know if the expert charged to prepare a report that was never provided, or whether these fees only account for the inspection itself, or whether those fees account for the written findings and photographs discussed by Ms. Moore. The Court is not convinced under the circumstances that the costs incurred were required or reasonable.

In any event, given Defendant's position at the time of the site inspection, the lack of any itemization, and the failure to provide any expert report, the Court declines to exercise its discretion to award these costs.

## V.   CONCLUSION AND ORDER

Based on the foregoing, IT IS ORDERED that Plaintiff's motion for attorney fees and expert witness costs (ECF No. 29) is granted in part as follows:

Plaintiff is awarded $10,901.50 in attorney fees.

IT IS SO ORDERED.

Dated:   **November 14, 2023**                    /s/ *Erica P. Grosjean*
                                                                        UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28